OIL, CHEMICAL AND ATOMIC WORKERS, INTERNATIONAL UNION, LOCAL NO. 4–228, et al., Plaintiffs-Appellants,

v.

UNION OIL COMPANY OF CALIFORNIA, Defendant-Appellee.

No. 86–2642.

United States Court of Appeals, Fifth Circuit.

June 5, 1987.

M. Diane Dwight, Grove, Tex., Thomas J. Swearingen, Port Arthur, Tex., for plaintiffs-appellants.

W. Carl Jordan, Stuart B. Johnston, Jr., Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, POLITZ, and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

Union Oil Company of California discharged employees Gregory Mendoza and Melinda Chester in the Summer of 1984 after discovering that each employee had been involved in illicit off-duty and off-premises drug activities. Both Mendoza and Chester grieved their discharges in binding arbitration pursuant to the collective bargaining agreement between their employer, Union Oil, and their union, Oil, Chemical and Atomic Workers' International Union Local 4-228. In February 1985 the arbitrator in Chester's case ordered Union Oil to reinstate Chester with backpay, while a different arbitrator upheld Mendoza's discharge a month later. Union Oil refused to reinstate Chester after a company physical in which she tested positive for drug use. The union and the individual employees filed suit in district court to enforce Chester's award and to reinstate Mendoza contrary to the arbitrator's decision. The court granted Union Oil's motion for summary judgment to dismiss both actions. The union and both employees appeal. We affirm with respect to Mendoza's discharge, but we vacate and remand Chester's case to the district court with instructions to remand to the arbitrator to reconsider Chester's reinstatement award in light of Chester's post-award drug use.

## I.

Mendoza and Chester were both employed at Union Oil's refinery in Nederland, Texas. In November 1983, Officer Johnny Sherwood, an undercover narcotics agent, was introduced to Mendoza at his apartment and purchased a bag of marijuana from him. Sherwood again purchased marijuana from Mendoza a month later. He also purchased what was supposed to have been a gram of cocaine from Mendoza; lab results showed that the white powder which Sherwood purchased from Mendoza was actually not cocaine. When Sherwood confronted Mendoza regarding the authenticity of the drug, Mendoza stated that he did not prepare the substance but was merely delivering it. Sherwood inquired further about the possibility of purchasing a larger amount of cocaine, and Mendoza arranged for such a purchase from fellow plaintiff, Chester.

Through Mendoza's contact, Chester met Sherwood in April 1984 and sold cocaine to him on four separate occasions, in quantities ranging from three and one-half grams to one ounce. Chester told Sherwood that she could obtain greater quantities for sale, perhaps even kilograms.

Both employees were arrested. Chester was charged with delivery of cocaine, but received a ten-year unadjudicated probation

for possession of prohibited drugs. After the facts of her drug dealings came to the company's attention, Chester was discharged in July 1984. Mendoza pled guilty to selling marijuana and was sentenced to ten years in the Texas Department of Corrections and fined $3,000. He was later allowed to change his plea to "no contest" and was placed on deferred adjudication, which meant that he would have no criminal record if he served his term of probation successfully. He was discharged in September 1984.[1]

Through the union, both employees filed grievances. The arbitrator who entertained Chester's grievance ordered her reinstatement with backpay. The arbitrator noted in particular that the probability of future sales and use of drugs was low since Chester was placed on probation and was aware that "the least violation of her probation [would] result in her being placed within the penitentiary." The arbitrator credited Chester's statements that she no longer used drugs and would remain drug-free in the future. The arbitrator found that there was no showing that Chester's reinstatement would increase the chances that other employees would be exposed to drugs.

In contrast to Chester's award, the arbitrator in Mendoza's case found that Union Oil had just cause to discharge Mendoza since his illegal use and sales of drugs constituted a "major offense," a ground for termination within the terms of the labor agreement. The arbitrator reasoned as follows:

> For this Arbitrator to return Gregory Mendoza to work in the Company's employ would be for this Arbitrator to make a mockery of the Company's strict drug abuse policy. For this Arbitrator to return Gregory Mendoza to work would be

to signal the Company's other bargaining unit employees that a green light exists for them to continue the practice of certain drug problems within the plant, i.e.; go ahead and do what you have always been doing, if you get caught and fired, grieve and appeal to arbitration, the Arbitrator would return you to work and get you paid for all time lost.

> Had the company discharged Mendoza for fighting with another employee in a public bar, being arrested for disturbing the peace, etc.; I would have to look closely at the Union's contention that Mendoza's conduct outside the plant had no adverse affect upon the Company's business.

> However, illegal use and dealing in drugs (controlled substances) off the job is altogether another and most serious matter. The Federal, State and Municipal Governments each year spend billions of taxpayers' money to fight, control and prevent the importation of durgs into the U.S.A., and to limit their use by our citizenry, all for good reasons.

> In good conscious this Arbitrator cannot return Gregory Mendoza to work with the Company because this Arbitrator lives in an area where oil refining processing is a dominant industry and he realizes and is fully knowledgeable of the fact that fires and explosions often occur in refining processes with calamitous and costly results. This Arbitrator feels that the Company does have a strong and moral responsibility to the balance of its employees and the community to provide for its employees as safe a place to work as possible, and safe from the influence of another employee, a known and convicted drug dealer and user, who may unduly influence other employees in dangerous and addictive practices.[2]

---

1. Both employees had been involved in questionable conduct in the past, which both arbitrators noted but did not appear to rely on in making their decisions. Chester was actually discharged in 1982 by Union Oil for being under the influence of drugs and for bringing quaaludes and marijuana onto plant premises. An arbitrator awarded her reinstatement but denied her backpay, finding that she did in fact bring drugs onto company property. Mendoza

had been arrested three previous times, once for possession of marijuana, for which he was fined.

2. Arbitrator Richard Taylor who presided over Mendoza's grievance recognized that Chester had earlier been awarded reinstatement, but noted that prior awards only have "persuasive effect." Arbitrator Taylor was not precedent-bound by the decision of Arbitrator Samuel

The district court approved this reasoning and granted Union Oil's motion for summary judgment, finding that the arbitrator's award in Mendoza's case drew its essence from the collective bargaining agreement.

Chester's award presented a more difficult issue. Shortly after her award, Chester tested positive for marijuana use in February 1985 as part of a company physical. Relying on that test, Union Oil refused to reinstate Chester. The probation service tested Chester in July 1985, and the results indicated that Chester had recently used cocaine and marijuana. At an administrative hearing, Chester admitted to using these drugs. Her probation was not revoked, however; instead she was ordered to attend a drug assessment to determine the necessity of treatment. She again tested positive for cocaine use in September 1985 and voluntarily admitted herself to a hospital for treatment of her drug dependency. Again, her probation was not revoked; instead she was committed to the Restitution Center, a closely supervised community for the treatment of drug dependency and Chester's last alternative to incarceration. Her drug tests since that time have been negative.

The district court refused to enforce Chester's award. The court noted that the arbitrator incorrectly assumed that the probation system would protect Union Oil's interests, since using drugs would have presumably violated Chester's probation. Chester did use drugs, however, and her probation was not revoked. The court emphasized that the arbitrator's reliance on Chester's promise not to use drugs proved to be unjustified. In light of Chester's subsequent drug use and the greater probability of a safety hazard due to Chester's use or sale of drugs, the court found that enforcement of Chester's award would violate public policy.

## II.

■ Arbitration is generally favored as a matter of federal labor policy. *See United*

*Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) [*Steelworkers' Trilogy*]. Judicial review of arbitration awards is extremely limited. Enforcement of an award should be denied only if the dispute was not arguably arbitrable, if the arbitrable decision did not draw its essence from the collective bargaining agreement, or if enforcement of the award by the court would violate public policy. *Amalgamated Meat Cutters and Butcher Workmen of North America AFL–CIO, Local Union 540 v. Great Western Food Co.*, 712 F.2d 122, 124 (5th Cir.1983).

Mendoza and the union argue that the arbitrator's award upholding his discharge did not draw its essence from the collective bargaining agreement. They contend that off-duty/off-premises drug involvement is not a ground for discharge under the labor agreement or the work rules, which only prohibit drug activities "while on company property or on duty." As a matter of public policy, they submit that discharge for off-duty/off-premises conduct is an impermissible extension of an employer's power over its employees.

This court has recognized in reviewing arbitration awards that the " 'essence' standard is to be interpreted expansively so as to uphold the award, rather than restrictively." *International Association of Machinists and Aerospace Workers, District 776 v. Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir.1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). If the arbitrator's decision is free from arbitrary or capricious interpretation, it will normally be upheld. *See Safeway Stores v. American Bakery & Confectionery Workers*, 390 F.2d 79, 81 (5th Cir.1968).

Nicholas to award Chester reinstatement. The main difference between the two opinions appears to be the belief on the part of Arbitrator Nicholas in Chester's case that she would not use drugs and thus would not present a safety risk in the future.

The collective bargaining agreement here provides that "[e]mployees may be suspended or discharged for major offenses." Mendoza's arbitrator determined that his illegal drug trafficking constituted a "major offense" within the terms of the agreement. The arbitrator observed that Union Oil had a very strong policy against drug abuse which had been communicated to all employees and that Mendoza might influence other employees to engage in similar drug activities, which would create an unsafe working environment. The arbitrator recognized that Mendoza worked in an industry where safety risks might have "calamitous and costly results."

■ Mendoza and the union nevertheless urge that no specific work rule lists off-premises drug involvement as a ground for termination and that "major offenses" only include conduct on plant premises. The arbitrator was not required to construe the work rules as exclusively defining the types of behavior that may constitute grounds for termination.[3] The arbitrator had the right to interpret "major offenses." He was free to find that Mendoza's drug trafficking and drug use rendered him a safety risk due to his potential influence on other employees and his ability to function coherently on the job.

Contrary to Mendoza's and the union's assertions, there is nothing "Orwellian" in the extension of Union Oil's authority over off-duty and off-premises conduct that had consequences as serious as this. The evidence before the arbitrator showed that Mendoza had engaged in various illegal drug transactions with an undercover narcotics agent. He not only sold illicit drugs to the agent, but arranged for the purchase of other drugs for the agent from fellow employee Chester. It was certainly reasonable for the arbitrator to conclude that this "off-premises" conduct could likely have an adverse impact on plant operations. The public policy which favors arbitration does not mandate that an arbitrator ignore the potential safety hazards which addictive drug use and dealing can present in the oil refinery work environment in favor of the narrow view that off-duty conduct can never affect an employee's work status. The arbitrator's interpretation of the collective bargaining agreement and his conclusion that just cause existed for Mendoza's discharge were entirely reasonable and not arbitrary or capricious.

The same principles of limited judicial review outlined above apply to our review of Chester's award. Union Oil's sole contention is that enforcement of Chester's award would violate public policy. *See Amalgamated Meat Cutters*, 712 F.2d at 124.

The district court agreed with Union Oil on the basis that Chester had tested positive for drug use and had admitted to using drugs since the February 1985 reinstatement award. The facts before the court showed the arbitrator had erroneously assumed that the terms of Chester's probation would deter future drug use. They also showed Chester violated her pledge not to use drugs. The court concluded that the probability of Chester's using drugs, influencing other employees, and creating a safety hazard was much greater than the arbitrator had assumed at the time he made the award.

Chester and the union counter that public policy actually supports the enforcement of her award. In particular, they argue that public policy favors rehabilitation of those addicted to drugs; this is best evidenced by the state's imposition of unadjudicated probation as opposed to confinement. Although Chester tested positive for drug use more than once since the award was made in February 1985, she now submits that she has been drug free for over a year.

■ We must initially decide whether the arbitrator's award reinstating Chester to her position at Union Oil violated public policy as matters stood in February 1985 before the results of Chester's first drug

---

**3.** The Work Rules also provide that any "act that would endanger the safety or life of others" is a ground for discharge. Although the arbitrator did not rely on this specific work rule to support his interpretation of "major offenses," he did stress the danger inherent in the oil refinery work environment.

test. This court has recognized the strong public policy against the operation of dangerous equipment by persons using drugs or alcohol. *See Misco, Inc. v. United Paperworkers International Union,* 768 F.2d 739 (5th Cir.1985), *cert. granted,* —— U.S. ——, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987);[4] *Amalgamated Meat Cutters,* 712 F.2d 122. However, the arbitrator found the probability that Chester's off-premises drug use would hinder or be involved in her performance on the job in the future was too low to merit her discharge. Off-duty/off-premises conduct involving the illegal use and sales of drugs is not *per se* justification for a worker's discharge. The collective bargaining agreement provides for binding arbitration. It was within the discretion of the arbitrator in Chester's case to credit the public policy favoring drug rehabilitation and find that Chester no longer used drugs and would not present a safety risk in the future. Based on the facts available at the time of the arbitration decision, enforcement of the arbitrator's award would not have violated public policy.

On the other hand, we are not constrained in our review of Chester's award to exclude evidence of subsequent conduct which could disclose that public policy bars the award's enforcement.[5] Indeed, we may not ignore the established fact that since the arbitrator ordered reinstatement, Chester, on more than one occasion, has used drugs contrary to the arbitrator's prediction.

■ Whether Chester's post-award drug use renders enforcement of her reinstate-ment award against public policy presents an issue that should be resolved by the arbitrator, not the court. The federal common law of labor has developed to give courts the power to remand a case to the arbitrator under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Grand Rapids Die Casting Corp. v. Local Union No. 159, United Automobile, Aerospace and Agricultural Implement Workers of America,* 684 F.2d 413, 416 (6th Cir.1982); *Local 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.,* 628 F.2d 644, 647 (1st Cir.1980). This court has approved the practice of remanding a labor dispute to the arbitrator for disposition of an unresolved issue where necessary to provide the parties to the collective bargaining agreement those benefits of arbitration "for which the parties bargained." *United Steelworkers of America v. W.C. Bradley Co.,* 551 F.2d 72, 73 (5th Cir.1977). *See also San Antonio Newspaper Guild, Local No. 25 v. San Antonio Light Division,* 481 F.2d 821, 825 (5th Cir.1973) (citing *Steelworkers' Trilogy:* "It is the arbitrator's construction which was bargained for.").

Here the parties bargained for the arbitrability of discharge grievances. The union and the company agreed that an arbitrator would determine whether an employee's termination was for just cause. Chester won her award. The arbitrator found the probability of an alleged safety risk so low as not to justify discharge. In deference to the arbitrator's ruling, we will not

---

**4.** As noted in the above citation, *Misco* is presently before the Supreme Court, which granted certiorari in part to address the perimeters of the public policy exception to the enforcement of arbitration awards. The Supreme Court's ultimate disposition should have no bearing on the result we announce in Chester's case. The public policy which this court recognized in *Misco* to deny a fired employee enforcement of his reinstatement award was not limitless. The employee there violated a specific company rule against bringing drugs onto plant premises. There was also circumstantial evidence that he was under the influence of drugs while at work. The arbitrator in *Misco* reinstated this employee because the company had discharged him be-fore it actually knew that marijuana residue was discovered in the employee's car on plant premises. This procedural irregularity did not override the public policy against the use of dangerous equipment by persons using drugs or alcohol. In contrast to the discharged employee in *Misco,* Chester was not discharged for bringing drugs onto plant premises or for being under the influence of drugs while on duty.

**5.** The district court cited dicta from *Misco,* 768 F.2d at 743, to support its view that events subsequent to the arbitrator's award may be considered by a court called upon to enforce the award.

preempt his February 1985 findings. But we now know that these findings were based on an erroneous prediction. Because the arbitrator can now substitute the evidence of Chester's post-award drug use for his prior speculation to the contrary, he should be given the opportunity to determine anew whether Chester's uncontrollable drug use created a substantial likelihood that Chester would influence other employees to do the same, or endanger plant operations and lives due to an impaired condition on the job.

The arbitrator's reliance on Chester's pledge not to use drugs and his assumption that Chester's probationary status would deter future use were clearly integral to the arbitrator's ultimate determination. The arbitrator should reconsider Chester's reinstatement and backpay award in light of Chester's post-award drug use to the extent that this conduct proves his findings were based on an erroneous prediction. The arbitrator is to determine whether Union Oil had just cause to discharge Chester as of February 1985 in view of the fact that she continued to use drugs. This result comports with the federal labor law policy favoring arbitration and discouraging the judicialization of arbitrable matters. Only through remand of Chester's case will the parties get what they bargained for.

### III.

The district court correctly dismissed Mendoza's action, which sought his reinstatement contrary to the arbitrator's award. However, the district court erred in the disposition of Chester's action. We direct the district court to resubmit to the arbitrator the issue of whether Chester's discharge was for just cause, with directions to reconsider Chester's reinstatement and backpay award in light of the fact that Chester did use drugs contrary to his prediction.

We emphasize that the remand is for the limited purpose of reviewing the 1985 award ordering Chester's reinstatement. Chester states she now has successfully completed a course of rehabilitation. This would be pertinent to her employability today. However, it has no pertinence to the remanded issue. Actual post-discharge conduct is to be considered only to the extent (1) that such conduct establishes that the arbitrator's prediction has been disproved by contrary fact and (2) that such conduct establishes that Chester's 1985 reinstatement could have carried the portent for danger to herself, her fellow workers or the refinery.

AFFIRMED, as to Mendoza, VACATED and REMANDED as to Chester.