United States Court of Appeals,

Fifth Circuit.

No. 94-30681.

EXXON CORP., Plaintiff-Appellant,

v.

BATON ROUGE OIL and Chemical Workers Union, Defendants-Appellees.

March 15, 1996.

Appeal from the United States District Court for the Middle District of Louisiana.

Before REYNALDO G. GARZA, JOLLY and DUHÉ, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal requires us to determine whether, as a matter of national policy, the federal courts must decline to enforce an arbitrator's award that orders only backpay—not reinstatement—for an employee who was fired because of drug use, but also fired in violation of the terms of his collective bargaining agreement. The case arose from the discharge of Donald Chube by Exxon Corporation for his violation of the company's policy on alcohol and drug use. Chube worked as a supervisor in a "safety-sensitive position," and was discharged after a drug test indicated that he had used cocaine. After Exxon terminated Chube, the Baton Rouge Oil and Chemical Workers Union grieved his discharge and won an order for Chube's reinstatement and back pay. The district court affirmed the arbitrator's alternative order for reinstatement only. Exxon appeals. We reverse and render.

I

Exxon operates a chemical plant near Baton Rouge, Louisiana.

1

The production and maintenance employees operate under a collective bargaining agreement dated March 31, 1988. Chube, who was ordinarily an operator in the olefins purification department, had been "stepped up" to a safety-sensitive classification, operations controller, in which he acted as a temporary supervisor. The record is unclear as to the permanency of this position, but it is clear that he was acting as a temporary supervisor at the time that he was drug-tested.

In 1987 Exxon revised its alcohol and drug use policy. The new policy authorized unannounced searches for drugs and alcohol on Exxon property. It also required employees to submit to alcohol and drug testing "where cause exists to suspect alcohol or drug use." A positive test result or refusal to submit to a test was grounds for disciplinary action, including termination. One year after Exxon revised its policy, the Drug-Free Workplace Act of 1988, 41 U.S.C. § 701-707, was enacted. To clarify its policies and to comply with the Act, Exxon published a list of "Posted Offenses," giving notice that an employee who committed one of the following offenses could be discharged or otherwise disciplined without notice:

   a. Being under the influence of alcohol, in the opinion of a doctor, Company guard, or supervisor, on Company time or property.

   b. Bringing onto Company property, or possessing or using on Company time or property, an alcoholic beverage, a habit-forming drug, or a drug which the Company believes may impair the employee's ability to perform duties in a safe and responsible manner.

   c. Habitual use of an alcoholic beverage or habit-forming drug; except where the Company doctor believes that such use

2

is necessary for the employee's health.

In early 1989, Exxon proposed to add random drug tests for a group of "designated positions" with critical safety responsibilities. Chube's job as temporary supervisor was one of these "designated positions." His permanent position as operator was not covered, however. The Union objected to the policy changes.[1] It expressed concern that the policy did not provide for employee rehabilitation. The Union also objected that the random test policy would not give employees ample notice that they would be subject to testing. Discussions between the Union and Exxon reached an impasse. Consequently, in August 1989, Exxon unilaterally issued a Revised Alcohol and Drug Abuse Policy, which was to be effective September 1, 1989. The policy contained the following paragraph:

> Exxon may conduct unannounced searches for drugs and alcohol on owned or controlled property. The Company may also require employees to submit to medical evaluation or alcohol and drug testing where cause exists to suspect alcohol or drug use. Unannounced periodic or random testing will be conducted when an employee meets any one of the following conditions: has

[1]The proposed policy change came to the Union's attention in April 1989, when Exxon published a notice advising its employees that it would be implementing a new policy, and summarizing the policy as follows:

> [A]n employee who has had or is suspected of having a substance abuse problem will not be allowed to work in certain positions. The positions, to be decided by management, will include critical jobs where operating problems could result in major risks to employees, public safety, and facilities. In addition, random drug and alcohol testing will be conducted when an employee: (1) has had a substance abuse problem, (2) returns from rehabilitation, (3) is assigned to certain positions, or (4) fills a position where testing is required by law.

3

had a substance abuse problem or is working in a designated position identified by management, a position where testing is required by law, or a specified executive position. A positive test result or refusal to submit to a drug or alcohol test is grounds for disciplinary action, including termination.

On August 24—a week before the new policy was to become effective—Chube, as an employee in a "highly sensitive position," was given a drug test, and the test was positive for cocaine use. On September 13, Exxon discharged Chube "for violating the Company's Alcohol and Drug Policy," but did not set out the precise nature of the violation. The Union filed a timely grievance on Chube's behalf, and when the matter was not resolved through the grievance process, the Union demanded arbitration. The issue stipulated for the arbitrator was whether Exxon had violated the contract when it discharged Chube and, if so, what should be the remedy.

The Union argued that, under Exxon's policies then in effect, the drug screen administered to Chube was solely to determine his eligibility to be assigned to a "designated position"; the test results could not be used for purposes of discipline because he had violated no posted rule in effect at the time of the test. Exxon responded that all employees had been given ample notice that a positive drug test would result in discharge. Furthermore, its policy was based on the obvious need to protect lives and property against possibly devastating accidents.

The arbitrator determined that the critical issue in the case was, not whether Chube engaged in the use of illegal drugs, but whether in this instance the presumed use of cocaine gave Exxon the

4

right under the contract to discharge Chube. He concluded that Exxon violated § 1121 of the contract by discharging Chube. That section reads as follows:

1121. *General*

(a) The Company may discipline an employee only for cause.

(b) The Company has posted a list of offenses which merit discipline. This list is dated January 3, 1984. Before the Company may make any change in this list or any subsequent list, the change must be agreed to by the Union.

(c) If an employee commits one of the posted offenses, it is cause for discipline, and the Company may discipline him without advance notice.

(d) Even though an employee does not commit a posted offense, his conduct or work performance may still be cause for discipline. However, the Company may not discipline him without giving him advance notice, and where practicable, an opportunity to correct the situation.

The arbitrator found that, under § 1121(b), Exxon could discharge Chube "without advance notice" only if Chube committed a posted offense. He further found that Chube had committed none of the posted offenses in effect on the date of the tests; specifically, there was no evidence that he had brought drugs on company property or possessed or used drugs on company time, or habitually used a habit-forming drug. The arbitrator noted that the 1989 drug policy did not become effective until September 1, 1989, and that Chube was tested before that date. Further, and at the heart of our review today, the arbitrator rejected Exxon's argument that, notwithstanding whether Exxon breached the collective bargaining agreement, Chube's discharge was justified

5

based on a strong public policy against the use of drugs.

The arbitrator's award required Exxon to reinstate Chube without loss of seniority, and pay him back pay and benefits, "calculated on the basis of [Chube's] permanent classification wage level." Alternatively—and only because Chube was incarcerated after his discharge for selling drugs—the arbitrator required Exxon to pay him one year's back pay in the event that Chube was still unavailable for reinstatement.[2]

Exxon then instituted this suit in the United States District Court for the Middle District of Louisiana, seeking, by motion for summary judgment, to vacate the arbitration award. The Union filed a cross motion for summary judgment, seeking enforcement of the award on the remedy of back pay plus costs, and not on the remedy of reinstatement. After the district court granted the Union's motion for summary judgment and enforced the arbitrator's award, Exxon timely appealed.

II

We review a grant of summary judgment *de novo. Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1412 (5th Cir.1993). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 639, 130 L.Ed.2d

---

[2]Chube was in prison on the date for his reinstatement.

6

545 (1994). We review "the facts drawing all inferences most favorable to the party opposing the motion." *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

Review of an arbitration proceeding is narrowly limited. A court will not disturb an award if it "draws its essence from the collective bargaining agreement" and is not based on the arbitrator's "own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). We may not reconsider an award based on alleged errors of fact or law or misinterpretation of the contract. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369-70, 98 L.Ed.2d 286 (1987). However, we may scrutinize the award to ensure that the arbitrator complied with the jurisdictional prerequisites of the collective bargaining agreement. *E.I. DuPont de Nemours and Co. v. Local 900 of Int'l Chemical Workers Union,* 968 F.2d 456 (5th Cir.1992) (internal quotations and citations omitted). The district court may vacate an arbitrator's award if the arbitrator exceeded its arbitral authority provided for in the agreement. *Id.*

Notwithstanding our normally narrow review of an arbitrator's award, if that award is contrary to public policy, the award cannot be enforced. A federal court may vacate the award if it is "clearly shown" that the award violates "well-defined and dominant" policy drawn from existing laws and legal precedent. *W.R. Grace and Co. v. International Union of Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183-84, 76 L.Ed.2d 298 (1983); *Misco,* 484

7

U.S. at 43-45, 108 S.Ct. at 374-75. It is on public policy grounds, as reflected in our opinion in *Gulf Coast Indus. Workers Union v. Exxon Corporation,* 991 F.2d 244, 248-55 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993), that we scrutinize the arbitrator's award in this case.

III

In this respect, Exxon argues that the arbitrator's award violates public policy because it orders reinstatement of "a cocaine user and convicted drug dealer to a highly safety-sensitive job."[3] Exxon contends that well-defined public policy, articulated by this court in *Gulf Coast Indus. Workers,* prohibits the return of drug users to jobs that pose a threat to the safety of other workers and/or the general public. It argues that allowing the arbitration award to stand, whether it involves reinstatement or merely payment of back pay, undermines the public policy against the use, possession, or positive testing for alcohol or drugs in the workplace.

The Union effectively counters that the order of reinstatement is moot; it only seeks enforcement of the arbitrator's alternative award limited to back pay. The Union admits that a public policy against drug use in safety sensitive positions exists; it

---

[3]Exxon also argued in its brief that the award did not "draw its essence from the contract" because it conflicted with three previous arbitration awards interpreting Exxon's alcohol and drug use policy and the Contract. Exxon contends that the arbitrator exceeded his authority under that section of the Contract that provided that the arbitrator must give prior awards *res judicata* effect. Because we find in Exxon's favor relative to its first argument, we need not reach the second.

8

contends, however, that that public policy is not at issue in this case because of the impossibility of reinstating Chube to his prior position. Generally adopting this view of the case, the district court observed that the arbitrator would have erred if it had actually required Exxon to reinstate Chube, but agreed with the Union that Chube was not available for reinstatement, and that that portion of the award was therefore immaterial to the appeal.

IV

We begin our public policy analysis with an examination of *W.R. Grace,* in which the Supreme Court clearly articulated the public policy standard. In that case an employer signed a conciliation agreement with the Equal Employment Opportunity Commission ("EEOC"). The agreement conflicted with the collective bargaining agreement because it rescinded certain provisions of the bargained-for seniority system to allow advancement of some minorities, which prompted adversely affected employees to file grievances. Ultimately, the Supreme Court was called upon to determine whether the collective bargaining agreement was unenforceable as violative of public policy. The court began by observing that a collective bargaining agreement is a contract, and, "as with any contract, a court may not enforce a collective bargaining agreement that is contrary to public policy." *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183. The Court stated:

> If the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it. Such a public policy, however, must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests."

9

*Id.* (citations omitted). The Court concluded that the company's voluntary commitment to two conflicting contractual obligations was a dilemma of its own making, and that enforcement of the collective bargaining agreement in the employees' favor violated no explicit public policy.

Four years later, in *Misco,* a paper plant employee was discharged after police apprehended him in a co-worker's car that was filled with marihuana smoke. The company asserted that the employee's action violated its rule against having an illegal substance on company property. The arbitrator upheld the union's grievance and ordered the employee reinstated, and the company filed suit to have the award vacated. The district court set aside the award on public policy grounds. A panel of this circuit affirmed, articulating the policy as "one against the operation of dangerous machinery by persons under the influence of drugs or alcohol." *Misco Inc. v. United Paperworkers International Union, AFL-CIO,* 768 F.2d 739, 743 (5th Cir.1985).

The Supreme Court reversed, holding that we had not followed *W.R. Grace* 's command to identify with specificity the existing laws and legal precedents underlying our public policy decision. The Court reiterated its holding from *W.R. Grace* that allowing public policy to bar the enforcement of an arbitrator's award is little more than "a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco,* 484 U.S. at 42, 108 S.Ct. at 373. As we observed in *Gulf Coast,*

10

> The Supreme Court re-emphasized in *Misco* that, when applying the narrow public policy exception, courts are forbidden to use imprecise notions of public policy which would allow ill-defined considerations to negate the rule favoring judicial deference. "At the very least," wrote Justice White, "an alleged public policy must be properly framed under the approach set out in *W.R. Grace,* and the violation of such a policy must be clearly shown if an award is not to be enforced."  484 U.S. at 43, 108 S.Ct. at 373.

*Gulf Coast Indus. Workers Union,* 991 F.2d at 249.

In *Gulf Coast,* our definitive post-*Misco* case, we again applied the public policy exception to bar enforcement of an otherwise valid arbitrator's award.  Exxon discharged an employee for violating its Alcohol and Drug Use Policy and for breaching an employee after-care agreement.  The Union filed a grievance contesting the termination, and the arbitrator held that summary discharge was unjustified and too harsh a penalty for the employee's violations.  The arbitrator directed Exxon to reinstate Woods to his previous job without backpay, contingent upon a negative drug and alcohol screen.  After the Union instituted suit to enforce the award, the district court granted Exxon's cross-motion for summary judgment, and vacated the arbitration award.

On appeal, we reviewed applicable law, including *W.R. Grace* and *Misco.*  We recognized that the district court had not "ground[ed] its decision upon an articulated review of laws and legal precedents that frown upon the reinstatement of such employees."  *Gulf Coast,* 991 F.2d at 250.  We noted that the district court had applied a "common sense public policy approach," and explained that we may not "use imprecise notions of public

11

policy which would allow ill-defined considerations to negate the rule favoring judicial deference." *Id.* at 249. We nevertheless affirmed vacating the arbitrator's award, holding "that it offends public policy for Woods, an employee who occupies a safety-sensitive position, to retain his job upon testing positive for cocaine while on the job and after having breached his company's drug abuse policy on two occasions—first when he broke his pledge of abstinence, and second when he failed to disclose his relapse." *Id.* We supported our holding by noting that "[t]here are countless statutes, regulations, company guidelines, and judicial decisions that pronounce the emphatic national desire to eradicate illicit drugs from the workplace." *Id.*

Since *Misco,* the Supreme Court has recognized a public policy against drug use in the workplace (in a slightly different context), stating that the government has a strong interest in preventing employees "from using alcohol or drugs while on duty" to ensure the safety of the public and the employees. *Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 621, 109 S.Ct. 1402, 1415, 103 L.Ed.2d 639 (1989) (holding, in context of challenge to Federal Railroad Administration drug and alcohol testing rules, that such tests were reasonable under the Fourth Amendment even though there was no requirement of warrant or reasonable suspicion, because of compelling government interest).

V

Thus, we come to the question of whether, notwithstanding Exxon's clear breach of the collective bargaining agreement, we

12

will deny enforcement of the arbitrator's award under the circumstances of this case. The Union makes a forceful argument that the case at bar must be distinguished from *Gulf Coast,* because the Union seeks only to enforce an award of back pay to Chube—an award that cannot be said to contain the element of endangerment that underlay our decision in *Gulf Coast.* In this case, the arbitrator heeded the admonition in our caselaw that such an order would violate public policy, and consequently crafted its order so that Chube would not be placed back into a safety-sensitive position. This distinction, the Union argues, in combination with *Misco* 's requirement of a hands-off approach to a review of an arbitrator's award, is sufficient to warrant affirmation of the arbitrator's award.

After thorough consideration of this argument, we cannot agree. It is undisputed that Chube occupied a safety-sensitive position. It is also undisputed that Chube tested positive for cocaine use while occupying that position, and thereby endangered the safety of other employees. We think that the public policy exception articulated in *Gulf Coast* must be read not only to prohibit the prospective placement of an employee into a position where he is a danger to his company and to fellow employees (i.e., order of reinstatement into a safety-sensitive position), but also to prohibit a retrospective approval of the conduct that created the unsafe situation in the first place (i.e., order of back pay or reinstatement into the job the employee held before promotion to a safety-sensitive position). In addition to addressing future

13

conduct, the public policy against drug use in safety-sensitive positions also must look back to the conduct that is the subject of the grievance. The policy looks to the future to ensure safety, but looks back to deny condonation of misconduct.

We think that the public policy against drug use in safety sensitive positions that we enunciated in *Gulf Coast* would be weakened by the arbitrator's order in this case. It suggests to the drug user in a safety-sensitive position that the maximum penalty that he might incur would either be reinstatement to his position prior to assuming the safety-sensitive duties, or, if reinstatement were impossible, back pay at the rate of his former position. Such a suggestion is consistent neither with the public policy we articulated in *Gulf Coast,* nor the statutes, regulations, and case law we cited in support of that public policy. In *Gulf Coast,* we highlighted the various legal sources reflecting our nation's "well defined and dominant" desire for a drug-free society. We cited federal statutes,[4] state statutes,[5] and various regulations. We also relied on previous case law that condemned

---

[4]Federal authority included the 1988 Drug-Free Workplace Act, 41 U.S.C. §§ 701-707, Defense Department regulations mandating a drug-free workplace (48 C.F.R. 223.5 (1992)), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, which affirmatively excludes from protection persons who are using drugs. The defendant in the *Gulf Coast* case, as in the case at bar, was Exxon. Obviously, the same statutes continue to apply to Exxon.

[5]We note that the State of Louisiana has adopted drug testing procedures and standards to be used by Louisiana businesses, further evidencing the clear public policy against drug use in that state. *See* La.Rev.Stat. Ann. §§ 49:1001-1015 (West Supp.1995).

the presence of drugs in the workplace,[6] and that noted the dangers associated with petro-chemical refineries.[7] In reviewing the legal sources we identified in *Gulf Coast,* we entertain no doubts that each of these bases is equally relevant to the case before us today.

## VI

We recognize that, under *Misco,* it is the rare case where public policy trumps the terms of a bargained-for agreement between a union and a corporation.[8] We conclude, however, that the arbitrator's award and remedy under the facts of this case—ordering reinstatement of or monetary award to an employee who, while working in a safety-sensitive position, tested positive for the use of drugs—violate well-established public policy against the use of drugs by employees in safety-sensitive positions. We therefore REVERSE the arbitrator's award in favor of Donald Chube, and RENDER

---

[6]*See, e.g., Oil Workers Loc. 4-228 v. Union Oil Co. of Cal.,* 818 F.2d 437, 442 (5th Cir.1987) (recognizing this Circuit's strong public policy against operation of dangerous machinery by persons using drugs or alcohol).

[7]*See, e.g., Union Oil,* 818 F.2d at 439, 441 n. 3 (affirming arbitrator's emphasis on "the danger inherent in the oil refinery work environment" where "fires and explosions often occur ... with calamitous and costly results").

[8]We are not unmindful of certain inequities, as between the company and the Union, that arise here: the Union has incurred significant expense in defending its contractual position—a position that has been upheld. The company, on the other hand, who has been held to have breached the contract, receives the benefit of incurring no monetary liability. We apply the public policy exception here only because we are absolutely convinced that public policy, as reflected in the body of this opinion, does not permit the grievant in this case to receive any monetary award.

judgment in favor of Exxon Corporation.

REVERSED and RENDERED.