IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-41303

_____


UNITED FOOD AND COMMERCIAL WORKERS UNION AFL-CIO, CLC
DISTRICT LOCAL UNION 540,

                    Plaintiff-Appellee,

          v.

PILGRIM'S PRIDE CORPORATION,

                    Defendant-Appellant.

                    ----------------------------------
                    Appeal from the United States District Court
                    for the Eastern District of Texas, Lufkin Division
                    ----------------------------------
                              October 15, 1999

Before POLITZ, DeMOSS and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

     Pilgrim's Pride Corporation [Pilgrim's Pride] appeals from
the district court's enforcement of an arbitration award,
claiming that such enforcement would violate national labor
policy.  United Food and Commercial Workers Union AFL-CIO, CLC
District Local Union 540 [Local 540] contends that this Court
does not have jurisdiction over this appeal, that we should
decline to decide the case in deference to the National Labor
Relations Board, and that the award does not violate national
labor policy.  Having determined that we have jurisdiction to
hear this appeal, we find that the district court's enforcement
order does not violate a "well-defined and dominant public
policy", *W.R. Grace & Co. v. International Union of Rubber
Workers*, 461 U.S. 757, 766 (1983), and therefore affirm.

## I. *Facts and Procedural History*

Pilgrim's Pride and Local 540 entered into a collective bargaining agreement [CBA], Article V of which addresses union dues and provides for a checkoff authorization form which is attached as an exhibit to the CBA. Employees who sign the form have their union dues deducted from their paychecks by the company which in turn pays the collected amount to the union.

The checkoff authorization form is addressed to "Any Employer under Contract with . . . Local 540," and states that the authorization "is not contingent upon my present or future membership in the Union."  The checkoff form also contains a portability clause:  "The Secretary-Treasurer of Local 540 is authorized to deposit this authorization with any Employer under contract with Local 540 and is further authorized to transfer this authorization to any other Employer under contract with Local 540 in the event that I should change employment."

The present dispute arose when certain Pilgrim's Pride employees, who had signed the checkoff authorization form, left employment with the company for various reasons and then were later rehired.  When Local 540 learned of these rehires, it requested that Pilgrim's Pride withhold union fees from the returning employees' paychecks.  Pilgrim's Pride did so.  Some of those employees objected to the deductions, and Pilgrim's Pride ceased withholding union dues from their paychecks.

Local 540 requested that the company deduct fees from all employees who had ever signed an authorization during the current

2

CBA; Pilgrim's Pride refused to reinstate withholding of fees for the objecting employees. Local 540 filed a grievance with the company, asserting that it was violating Article V (Dues) of the CBA. Pilgrim's Pride rejected the grievance.

Pilgrim's Pride filed a complaint against Local 540 with the National Labor Relations Board [NLRB], alleging that the union "restrained and coerced" employees by demanding that fees be withheld in violation of Section 8(b)(1)(A) and (2) of the National Labor Relations Act [NLRA], 29 U.S.C. § 151 et seq. (Final determination by the NLRB is still pending). Local 540 then filed a complaint in district court seeking to compel Pilgrim's Pride into arbitration of the dispute as required under the CBA. The district court granted the union's request.

The arbitrator found for Local 540 and ordered payment of the union fees that had not been deducted from returning employees' paychecks. Pilgrim's Pride refused to comply with the award. On Local 540's motion, the district court issued an order enforcing the arbitrator's award. That order states: "ORDERED that the award is hereby enforced. Should the National Labor Relations Board hereafter enter a final order . . . concluding that Plaintiff has violated the NLRB or that enforcement of the award would do so, either party may move for relief from this Order." Pilgrim's Pride appeals from this order enforcing the arbitration award.

II. *Analysis*

A. *Jurisdiction*

3

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Local 540 argues that the enforcement order is not final and appealable because it leaves open the possibility that the parties could later seek relief from it. However, that the district court might later modify its order does not diminish its finality or present effect. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). The enforcement order in this case dispositively grants the relief sought by Local 540, *see United States v. Jose*, 519 U.S. 54, 56-57 (1996), and ends the litigation on the merits in the district court. *See Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984) (en banc). Orders confirming and executing arbitration awards are routinely appealable. *See, e.g.*, Federal Arbitration Act, 9 U.S.C. § 16; *F.C. Shaffer & Assocs., Inc. v. Demech Contractors, Ltd.*, 101 F.3d 40, 43 (5th Cir. 1996). The enforcement order in this case disposes of the litigation below. It is final and this Court has jurisdiction to hear its appeal.

B.  *Abstention in favor of the National Labor Relations Board*

Local 540 argues that, even if we have jurisdiction, we should decline to rule in this case because a parallel action is pending before the NLRB. We disagree.

While the NLRB has primary jurisdiction to decide what constitutes unfair labor practices under the NLRA, *see Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982), it is not the exclusive tribunal for the adjudication of labor disputes,

4

particularly those involving interpretation of a CBA.  *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 202 (1991). Arbitration is a proper method for resolving disputes under a CBA even if the same set of facts could relate to an unfair labor practice charge.  *See Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964).  Federal courts have jurisdiction over arbitration enforcement suits under such circumstances.  *See General Warehousemen and Helpers Local 767 v. Standard Brands, Inc.*, 579 F.2d 1282, 1289 (5th Cir. 1978) (en banc), *cert. dismissed*, 441 U.S. 957 (1979).

If the NLRB's decision ultimately conflicts with the arbitrator's award, it will govern.  *See Carey*, 375 U.S. at 272. That possibility does not prevent us from evaluating the enforcement of the award in the meantime.  We review the arbitration award for its conformity with the CBA and with national labor policy as it is currently established.  Our review is not contingent on the NLRB's ruling in this case.

C.  *Conformity with national labor policy*

A district court's confirmation or enforcement of an arbitration award is reviewed under a de novo standard.  *See Gateway Technologies, Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993, 996 (5th Cir. 1995).  Review of an arbitrator's award itself is very limited.  *See Six Flags Over Texas, Inc. v. International Brotherhood of Electrical Workers, Local 116*, 143 F.3d 213, 214-15 (5th Cir. 1998); *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996).  The award should be upheld if it "draws its

5

essence from the collective bargaining agreement," *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960), and the arbitrator did not exceed his or her authority under the CBA. *See E.I. DuPont de Nemours & Co. v. Local 900 of Int'l Chemical Workers Union*, 968 F.2d 456 (5th Cir. 1992). A reviewing court may not second guess mere errors of fact, law, or interpretation of the CBA. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). All doubts regarding sustainability of an award are resolved in favor of the arbitration process. *See Six Flags Over Texas*, 143 F.3d at 215.

The very deferential review afforded to arbitration awards derives from the Steelworkers' Trilogy (*United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960). The trilogy, and the cases that follow it, stand for the proposition that industrial peace is best preserved by supporting collective bargaining agreements and the arbitration procedures that are an integral part of them. Intrusive review of arbitration awards by the courts would undermine the federal policy favoring labor arbitration. *See Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 596. Such review would destroy the bargained-for finality of arbitration; the courts therefore "have no business weighing the merits of the grievance." *Steelworkers v. American Mfg. Co.*, 363 U.S. at 568.

6

Nevertheless, an exception to this general deference to arbitration exists for awards that clearly violate "well-defined and dominant" public policy. *See W.R. Grace & Co. v. International Union of Rubber Workers*, 461 U.S. 757, 766 (1983). But "well-defined and dominant" public policy, however, cannot be generally stated or surmised from common sense; a reviewing court must specifically identify the laws or legal precedent upon which it bases its determination that the award contravenes public policy. *See Misco*, 484 U.S. at 36. *Misco* teaches us that we are not to reach out and extend, ad hoc, the public policy exception unless the enforcement order before us violates established law.

Pilgrim's Pride focuses its brief on its contention that the exception recognized in *W.R. Grace* and delineated in *Misco* applied to the award subject of this appeal.[1] Specifically, it argues that the arbitration award violates a national labor policy against deducting union fees from rehired employees' pay without a new authorization form. Pilgrim's Pride bases this argument solely on the NLRB ruling and subsequent affirmation contained in *NLRB v. Brotherhood of Ry. Airline & Steamship Clerks*, 498 F.2d 1105 (5th Cir. 1974).

---

[1]The parties do not allege that there was no agreement to arbitrate, that the dispute did not arise under the CBA or that the arbitrator engaged in any misconduct. Pilgrim's Pride does argue that the arbitrator misinterpreted the checkoff authorization language in the CBA. The arbitrator's decision that the form's language applied to rehired employees is not reviewable in itself, however. The arbitrator clearly did not ignore the plain language of the CBA. *See Misco*, 484 U.S. at 38. The only means by which this Court could vacate the enforcement order would be to find that the award violates a well-defined and dominant public policy.

7

In that case, the NLRB ruled that it was an unfair labor practice for a union to cause an employer "to deduct union dues from wages pursuant to dues checkoff authorizations given prior to the severance of employees who were later rehired." *Id.* at 1106-07. Unlike the authorization used in the Pilgrim's Pride CBA, the authorization in *Steamship Clerks* did not have a portability clause: it did not apply to any employer under contract with the union. The Court in *Steamship Clerks* held that "the fundamental basis for the checkoff is the voluntary consent of an employee." *Id.* at 1109. Finding such consent lacking on the facts before it, the Court upheld the NLRB's ruling.

The portability clause contained in the authorization used by Pilgrim's Pride makes *Steamship Clerks* inapplicable to the facts of this case. The language extending the authorization to "any employer" under contract with the union evinces a measure of consent on the part of employees signing it to be bound by the authorization when they are rehired by the same employer.

This Circuit has invoked the national labor policy exception in several circumstances, applying the *Misco* standard. *See, e.g.*, *E.F. Etie Sheet Metal*, 1 F.3d at 1475-76; *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 855-56 (5th Cir. 1996); *Gulf Coast Indus. Workers Union v. Exxon Corp.*, 991 F.2d 244, 248-55 (5th Cir.), *cert. denied*, 510 U.S. 965 (1993). In each of those cases, the dominant and well-defined policy which justified refusing to enforce an arbitration award was established by reference to multiple controlling cases, relevant statutes, and

8

rulings by the NLRB.

We do not express an opinion as to the minimum justification required to establish a dominant and well-defined public policy. Nor do we purport to decide whether Local 540 engaged in an unfair labor practice as a matter of direct interpretation of the NLRA; that question is currently before the NLRB. We do hold that Pilgrim's Pride has not established that the arbitration award or its enforcement violates a well-defined and dominant national labor policy by analogizing to a single case that specifically left open the question before us, i.e. whether a dues authorization would be enforceable upon rehiring when the employee has consented to its transfer.

### III. *Conclusion*

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and need not abstain from deciding the case out of deference to the NLRB. The arbitration award in issue was based on the collective bargaining agreement between the parties and the arbitrator did not exceed his authority in making his determination. Since Pilgrim's Pride has failed to establish that enforcement of the award operates to violate a dominant and well-defined national labor policy, it cannot avoid through this appeal the enforcement of the arbitrator's award. We AFFIRM the judgment of the district court enforcing the arbitration award.