**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-40208

LOCAL 1351 INTERNATIONAL LONGSHOREMENS ASSOCIATION; SOUTH ATLANTIC AND GULF DISTRICT INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO,

Plaintiffs-Appellees,

versus

SEA-LAND SERVICE INC; CARRIERS' CONTAINER COUNCIL,

Defendants-Appellees,

versus

OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, AFL-CIO (OPEIU),

Movant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

June 9, 2000

Before GARWOOD, BARKSDALE, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Before the court is a jurisdictional dispute involving two unions. The disputes began roughly in 1994 and involve the apportionment of employees assigned to work the gate at Sea-Land's Houston port facility. Defendant-Appellee Sea-Land Service, Inc. ("Sea-Land") is a party to separate collective bargaining agreements with both Plaintiff-Appellee Local 1351 International

Longshoremen's Association ("ILA") and Movant-Appellant the Office & Professional Employees International Union ("OPEIU"). Both agreements contain similar grievance procedures providing for the resolution of disputes through arbitration. The district court ordered Sea-Land and the unions to participate in a tripartite arbitration. For the following reasons, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Both unions in this case contest the assignment of work by Sea-Land at its Port of Houston ("Port") facility, specifically the number of OPEIU and ILA employees that should be employed to do record keeping and clerical work at the container terminal in accordance with their respective collective bargaining agreements. Prior to 1992, ILA clerks obtained documentation at the terminal and gave handwritten forms to OPEIU clerks who would either then type the data or enter it into a computer system. In 1992, Sea-Land purchased a new computer system which made it unnecessary to have the information written first, and then inputted. Sea-Land assigned the remaining work of collecting the data and entering it into the computer system to ILA.

OPEIU filed a grievance against Sea-Land protesting the loss of this work. On May 5, 1995, OPEIU and Sea-Land entered into a bilateral arbitration. The arbitrator found that OPEIU and ILA were entitled to share the work at the container terminal 50-50. On June 28, 1996, OPEIU obtained a judgment in the Southern District of New York enforcing the arbitrator's award.[1]  Thereafter, on July 24, 1997, OPEIU filed another grievance regarding the allocation of work at the Port facility, alleging that Sea-Land was not in compliance with the arbitration award and accompanying court

---

[1] The judgment confirming the award was issued in OPEIU v. Sea-Land Servs., Inc., No. 96-CV-3043 (S.D.N.Y. 1996) by Judge Robert P. Patterson, Jr.

2

judgment. After Sea-Land denied the grievance, OPEIU contacted the arbitrator on July 30, 1997, and a hearing was scheduled on the grievance for September 17, 1997 ("Marx arbitration").

ILA did not participate in the arbitration proceedings held between OPEIU and Sea-Land. On March 4, 1997, ILA asserted two grievances also protesting the assignment of work at the Port to employees represented by OPEIU. The Local Industry Grievance Committee found that all clerical work at the gate of the Port facility must be performed exclusively by ILA. Following completion of this arbitration, which did not include OPEIU,[2] on August 22, 1997 ILA brought suit in the Southern District of Texas before Judge Samuel Kent seeking to confirm the arbitration award which enforced the two grievance awards. As an affirmative defense, Sea-Land argued that the arbitration award which had been confirmed in the Southern District of New York's judgment ordered it to divide the work in question equally between ILA and OPEIU. OPEIU was neither named or served in this present action. However, ILA and Sea-Land asked for a stay of the Marx arbitration scheduled to take place between OPEIU and Sea-Land, and Judge Kent granted this stay.

On September 12, 1997, pursuant to Federal Rule of Civil Procedure 19 ("Rule 19"), the district court joined OPEIU as an indispensable party. At the same time, the district court stayed further bilateral arbitration proceedings between OPEIU and Sea-Land.[3] The court then denied

---

[2] OPEIU was not a party to the collective-bargaining agreement between ILA and Sea-Land; it did not receive notice of or participate in the ILA/Sea-Land grievance proceedings.

[3] In response to ILA's and Sea-Land's request to stay the proceedings in OPEIU's case, Judge Kent said:

> I'm troubled right now with the notion of whether I have jurisdiction to go around telling arbitrators and people who are not immediately before the Court what to do, but I'm willing to try, and until the Circuit says I can't, I guess I can . . . . Give me a proposed order that stops everything in its track right now.

OPEIU's motion to dismiss[4] on October 3, 1997. On October 9, the district court ordered all parties to re-arbitrate their dispute in one tripartite arbitration proceeding. OPEIU then filed a motion to reconsider and asked that the court vacate its other orders regarding OPEIU. OPEIU attended the arbitration because of the threat of a show cause order levied by Judge Kent. At the arbitration, held November 17-18, 1997, OPEIU objected on the record but did not participate further in the arbitration. OPEIU offered no evidence or witnesses at the tripartite arbitration hearing.

On January 7, 1998, the arbitrator rendered his award, awarding all the work in dispute to ILA. On January 13, 1998, the district court confirmed the award *sua sponte*, simultaneously dismissing ILA's claims against Sea-Land with prejudice and denying OPEIU's motion to reconsider and request that the district court vacate its order staying arbitration and ordering tripartite arbitration.

OPEIU moved for an order in the Southern District of New York for enforcement of its original judgment against Sea-Land. On May 4, 1998, Judge Patterson of the Southern District of New York denied OPEIU's motion. The district court stated "we agree with the Texas court that

---

After the arbitration, Judge Kent denied OPIEU's motion to reconsider, writing that:

> [B]ecause this Court had no knowledge of [the Southern District of New York's] decision, this Court acted promptly in accordance with substantial authority . . . . If this Court overstepped its bounds, the Court respectfully notes that the Fifth Circuit can sort it out.

Apparently, Judge Kent *did* have knowledge of Judge Patterson's decision. At the hearing involving a stay several months earlier, Judge Kent told counsel for Sea-Land (who had informed him of the OPEIU arbitration award) that "I'm not interested in getting into some catfight with another district Judge."

[4] OPEIU had moved to dismiss for lack of jurisdiction because it had been neither named nor served in the suit and because it is not a party to the ILA/Sea-Land collective-bargaining agreement.

tripartite arbitration provided a pragmatic solution." In April 2000, the Second Circuit affirmed the New York district court's denial of OPEIU's motion seeking enforcement of the prior judgment which had been awarded in its favor. See OPEIU v. Sea-Land, 210 F.3d 117 (2nd Cir. 2000)

## DISCUSSION

I.    Standard of Review

We exercise plenary, de novo review of a district court's assumption of subject matter jurisdiction. See Ceres Gulf v. Cooper, 957 F.2d 1199, 1204 (5th Cir. 1992). We also review a district court's grant of a motion to compel arbitration de novo. See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1064 (5th Cir. 1998).


II.    Subject Matter Jurisdiction

Appellant argues that the district court did not have subject matter jurisdiction over OPEIU's dispute with Sea-Land and therefore, was without authority to order OPEIU to participate in the tripartite arbitration. We must satisfy ourselves, independent of the district court's analysis, that we have jurisdiction over the case. See Silver Star Enters., Inc. v. M/V Saramacca, 19 F.3d 1008, 1013 n.6 (5th Cir. 1994). The district court's basis for ordering OPEIU to participate in the present case is that under FED. R. CIV. P. 19 OPEIU is an indispensable party to this litigation. Rule 19 provides for the joinder of persons necessary for a just adjudication. In pertinent part, the Rule states that

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any one of the persons already parties subject to

5

a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party.

FED. R. CIV. P. 19(a).

Joinder was appropriate in the present case because the underlying issue in this action is a dispute between OPEIU and ILA over how many workers each is entitled to have at the Port facility gate. Although ILA filed this action, both unions have an interest in how the work will be allocated. It is also clear that the separate grievances filed regarding the allocation of this work left Sea-Land with inconsistent obligations. Consequently, joinder was proper in accordance with Rule 19 because a final resolution of this dispute would be severely hindered without OPEIU's presence. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 107-09, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

As another basis for jurisdiction over this matter, appellees cite 29 U.S.C. § 185 (the Labor and Management Relations Act § 301 ("LMRA")), and 9 U.S.C. § 9 (Federal Arbitration Act, "FAA"). Both the LMRA and the FAA grant jurisdiction over parties who are signatories to the collective-bargaining agreement in dispute. See, e.g. Ramsey v. Signal Delivery Serv., Inc., 631 F.2d 1210, 1212 (5th Cir. 1984) (observing that suits under the LMRA "are confined to defendants who are signatories of the collective-bargaining agreement under which they are brought"); Commercial Metals Co. v. Balfour, Guthrie & Co. Ltd., 577 F.2d 264, 268-69 (5th Cir. 1978) (holding that a federal question must exist before jurisdiction is conferred by the FAA). The federal courts also have broad discretion in implementing the policies embodied in our national labor laws. See Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 456-57, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957).

ILA filed the present action seeking confirmation of the arbitrator's award which enforced ILA's two grievance awards. These grievance awards were based on the collective bargaining agreement between ILA and Sea-Land. Therefore, the district court clearly had jurisdiction to confirm ILA's two grievance awards. Although OPEIU is not a signatory to the collective bargaining agreement between ILA and Sea-Land, OPEIU does have a separate collective bargaining agreement with Sea-Land that mandates arbitration. Because assignment of work at the Port facility is the central issue of ILA's dispute and any decision would effect OPEIU and its collective bargaining agreement, the district court had broad discretion to exercise jurisdiction under LMRA.

III.    Authority to Compel Tripartite Arbitration

Appellant argues that the district court did not have authority to order OPEIU, ILA and Sea-Land into a joint tripartite arbitration absent an agreement between the three parties to participate in this type of arbitration. This court has previously addressed whether three parties who are signatories to two separate agreements can be ordered to submit to tripartite arbitration. See Del E. Webb Constr. v. Richardson Hosp. Auth., 823 F.2d 145, 148 (5th Cir. 1987). In Del E. Webb, we reversed a district court's consolidation of separate claims among a contractor, a construction company, and an architect. See id. at 147-48. We there observed that "the sole question for the district court is whether there is a written agreement among the parties providing for consolidated arbitration." Id. at 149. We also held that, under § 4 of the FAA, a district court may not order tripartite arbitration

7

unless all three parties consent in writing to arbitration in the agreement itself, even if the result is piecemeal litigation. See id. at 147, 150.[5]

While Del E. Webb is instructive the facts of the present case differ significantly because this is a labor dispute. The Supreme Court has noted that labor arbitration should not be treated in the same manner as arbitration of general commercial disputes. In Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960) the Court stated that:

> [T]he run of arbitration cases . . . becomes irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself.

363 U.S. at 578 (internal citations omitted). Specifically, the Supreme Court has recognized the place of tripartite arbitration in labor disputes. The Court has observed that,

---

[5] See also, Champ v. Siegel Trading Co., Inc., 55 F.3d 269, 277 (7th Cir. 1995) (noting that the Supreme Court "has repeatedly emphasized that we must rigorously enforce the parties' agreement as they wrote it, even if the result is piece-meal litigation"); Government of United Kingdom v. Boeing Co., 998 F.2d 68, 74 (2nd Cir. 1993) (holding that a district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation); American Centennial Ins. Co. v. National Cas. Co., 951 F.2d 107, 108 (6th Cir. 1991) (holding that a court is not permitted to interfere with private arbitration agreements in order to impose its own view of speed and economy, even where the result would be the inefficient maintenance of separate proceedings); Baesler v. Continental Grain Co., 900 F.2d 1193, 1195 (8th Cir. 1990) (holding that the Supreme Court "has explicitly rejected the assertion that the overriding goal of the [FAA] is to promote the expeditious resolution of claims"); Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp., 873 F.2d 281, 282 (11th Cir. 1989) (per curiam) (stating that "[p]arties may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements, but if such provisions are absent, federal courts may not read them in").

> In order to interpret [a collective-bargaining] agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to such agreements. This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments.

Transportation-Communication Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 161, 87 S.Ct. 369, 17 L.Ed. 2d 264 (1967).

Other circuits have affirmed tripartite arbitration orders in situations where two unions have received conflicting arbitration awards or where a union is seeking to be awarded work that may lead to a grievance from another union. See, e.g. United States Postal Serv. v. National Rural Letter Carriers Ass'n, 959 F.2d 283, 286-87 (D.C. Cir. 1992); Retail, Wholesale & Dep't Store Union, Local 390 v. Kroger Co., 927 F.2d 275, 281 (6th Cir. 1991) (involving conflicting bilateral arbitration awards); United States Postal Serv. v. American Postal Workers Union, 893 F.2d 1117, 1119 (9th Cir. 1990); Local 850, Int'l Ass'n of Machinists v. T.I.M.E.-D.C., Inc., 705 F.2d 1275, 1277 (10th Cir. 1983) (involving conflicting awards); Columbia Broadcasting Sys., Inc. v. American Recording & Broadcasting Ass'n, 414 F.2d 1326, 1328-29 (2nd Cir. 1969).

While tripartite arbitration is generally favored in these types of labor disputes, the major procedural obstacle to ordering it in the present case is that the Southern District of New York had already entered a final judgment affirming the arbitrator's decision in the grievance filed by OPEIU against Sea-Land. None of the cases in which courts ordered tripartite arbitration have involved an earlier arbitration award which has already been confirmed by a district court's final judgment. See e.g., Retail, Wholesale & Dep't Store Union, 959 F.2d at 276-77 (union who received arbitration award first ordered into tripartite arbitration when it sought confirmation of that arbitration award);

9

Columbia Broadcasting System, 414 F.2d at 1327 (employer sought tripartite arbitration before entering bilateral arbitration with either of the two unions).

The district court itself recognized that a final judgment had been entered by another district court. The district court sidestepped this issue, however, by questioning the validity of the New York court's decision because ILA had not been joined as a party. The Supreme Court has previously indicated that an arbitration award may be unenforceable if an indispensable party is missing from the litigation. See Transportation-Communication, 385 U.S. at 159. The Second Circuit, in affirming the Southern District of New York decision, explained that the essence of the New York court's decision was that ILA was a necessary party to the initial arbitration in New York between Sea-Land and OPEIU, and that ILA's absence "rendered continued enforcement of the judgment entered on that award in New York inequitable." OPEIU, 210 F.3d at 122. The Second Circuit held that "the New York court had the power to decline to enforce the judgment confirming an arbitration award because a change in circumstances had made clear that the dispute was a jurisdictional labor dispute, that tripartite arbitration was the proper and necessary vehicle to resolve the dispute." Id. at 123.

Despite the Second Circuit's holding that the New York district court appropriately declined to enforce its previous judgment the Second Circuit declined to rule on the issue that is squarely before us in this case, namely whether the Texas district court erred in ordering tripartite arbitration. Id. at 124 ("The issue of whether the Texas action constituted an impermissible collateral attack on the Southern District of New York judgment, or whether the Texas Court erred in ordering tripartite arbitration, is not before us."). The actions of the district court in regards to the dispute between Sea-Land and OPEIU violate the rule of collateral estoppel and res judicata. See Hicks v. Quaker Oats Co., 662 F.2d 1158, 1166 (5th Cir. 1981) (stating that those doctrines apply where the issues

10

are identical, the issue has been previously litigated, and the determination of the issue previously was a critical and necessary part of the judgment in that earlier action); see also Universal American Barge Corp. v. J-Chem, Inc., 946 F.2d 1131, 1135 (5th Cir. 1992) (holding that collateral estoppel applies to arbitration proceedings); Miller Brewing Co. v. Fort Worth Distributing Co., Inc., 781 F.2d 494, 498 (5th Cir. 1986) (holding that res judicata precludes a party's seeking relief through arbitration when such relief would be barred in the courts). Consequently, the district court should not have disturbed the final judgment and ordered OPEIU to participate in a tripartite arbitration.  Although as the Second Circuit noted, Judge Patterson may have properly refused to enforce his initial judgment, and acknowledged that tripartite arbitration was the appropriate solution, this only occurred after the Southern District of Texas had ordered the tripartite arbitration in October 1997. OPEIU, relying on the final judgment, essentially refused to participate in the tripartite arbitration. OPEIU should not be penalized for relying on a final judgment.  See United Food and Commercial Workers Union AFL-CIO v. Pilgrim's Pride Corporation, 193 F.3d 328, 331 (5th Cir. 1999) (stating that although a district court might later modify its enforcement order of an arbitration award, this does not diminish the order's finality or present effect).  Therefore, the district court's decision to order a tripartite arbitration, although well intentioned, was inappropriate in the wake of the final judgment which OPEIU had obtained.[6]

**CONCLUSION**

---

[6] Because we have concluded that the district court erred in ordering the tripartite arbitration we will not address the appropriateness of the district court's confirmation of the tripartite arbitration award.

11

Although achieving fair and complete resolution of this multi-faceted dispute through tripartite proceedings was the laudable objective of the district court, the procedural posture of the parties at the time the judgment was entered militated against pursuing tripartite arbitration. Arguably, piecemeal litigation will result from this holding, but the alternative course of action--making a party who has relied on a final judgment subsequently submit to another arbitration--is not congruent with the controlling case law. Accordingly, the district court's judgment is REVERSED and REMANDED for proceedings consistent with this opinion.