IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.00-30626

Summary Calendar
_____


ALFRED E BRANDON

                              Plaintiff - Appellant

    v.

LOCKHEED MARTIN CORPORATION, ET AL

                              Defendants
LOCKHEED MARTIN CORPORATION

                              Defendant - Appellee
_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 99-CV-3513-C
_____
July 6, 2001

Before KING, Chief Judge, and JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Alfred E. Brandon appeals from the

district court's grant of summary judgment on his wrongful

discharge, discrimination, and retaliation claims in favor of

Defendant-Appellee Lockheed Martin Corporation.  For the

following reasons, we AFFIRM.

_____

    [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Alfred E. Brandon, an African-American male, began working for Defendant-Appellee Lockheed Martin Corporation, Michoud Space Systems ("Lockheed") on November 14, 1977. He was terminated from Lockheed, effective September 21, 1998, for allegedly sleeping at work and eating lunch during his scheduled work time. At the time of his termination, Brandon was a member of Local No. 1921 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "Union"), and his employment with Lockheed was governed by the terms of the Collective Bargaining Agreement (the "CBA") between Lockheed and the Union.[1]

On January 13, 1998, Brandon received a Notice of Disciplinary Action as a result of having been caught watching "Monday Night Football" on television during his scheduled work hours. The Notice stated:

> This is a very serious violation of company rules which forbid leaving your work area without authorization, idling/loafing by watching television during work hours and the use of government/company equipment for other than official business. Normally, discipline for this offense is discharge. However, the company is willing, on a non-precedent setting basis, to reduce the discharge to a thirty (30) work day suspension without pay . . . . Any future same or similar act(s) will result in your immediate discharge.

---

[1] According to Article I of the CBA, the Union is the "exclusive representative for all production and maintenance employees of" Lockheed "for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment."

On September 16, 1998, Brandon was allegedly caught sleeping in his work area, and, on September 18, 1998, he was allegedly caught eating lunch outside of his assigned eating period. On September 21, 1998, Brandon attended an investigative hearing with human resources personnel, in which he was informed of the allegations that he had broken company rules and was suspended pending an investigation.

According to Lockheed, a letter, which Brandon asserts he never received,[2] was sent to Brandon's home address on September 24, 1998, which stated that he was terminated effective September 21, 1998. Additionally, a copy of the letter was placed in the Union's in-plant mailbox.[3]

Brandon filed two grievances with the Union. In the first grievance ("Grievance I"), filed on October 5, 1998, he argued that Lockheed had not notified him in writing of the outcome of the investigation within the ten-day limit required by the CBA.

---

[2] However, Brandon admits he received notice of his termination on October 21, 1998. This notice stated that he was "[d]ischarged for violation of prior disciplinary action agreement concerning future conduct" and did not mention the alleged offenses of September 16 and 18. Therefore, he maintains that the notice did not meet the requirements of the CBA. He asserts that the first written notice he received regarding his alleged offenses was from the state of Louisiana and sent in relation to an unemployment benefits hearing.

[3] According to Lockheed, the letter was sent from Lockheed's mailroom to Brandon's home address by certified mail on September 30, 1998. After an investigation, the United States Postal Service concluded that the letter was irretrievably lost and issued a refund to Lockheed.

Lockheed rejected Grievance I, stating that it had mailed the notification letter to Brandon's home address on the sixth day of the ten-day period. Brandon filed a second grievance ("Grievance II"), on October 27, 1998, challenging his termination on the merits. Lockheed denied Grievance II as untimely on November 10, 1998.

The Union accepted Lockheed's position regarding Grievance II, but brought Grievance I to arbitration, maintaining that Brandon had not been presented with the reprimand in writing within ten days. The arbitrator found in favor of Lockheed, deciding that, although notice to the Union does not normally constitute notice to the employee, when, as in this case, the Union forwards the company's decision to the employee within the ten-day period presentation is perfected.[4]

Brandon filed a charge of discrimination with the Louisiana Commission on Human Rights and the EEOC on September 3, 1999, alleging that he believed he was discharged because of his race

---

[4] The arbitrator relied on statements from Bargaining Committee Chair Benny McCormick to find that Brandon had actual knowledge of the termination. McCormick stated that, sometime on or before October 1, he contacted Brandon to ask him to come to the Union office. When Brandon came, McCormick read him the termination letter and described the grievance McCormick had already drafted on the merits. Instead of submitting that grievance, McCormick and Brandon decided to wait until Brandon received the notice himself. The arbitrator found the actual date of this meeting to be unclear, but noted that McCormick had indicated to the NLRB that the conversation happened on October 1 and that two other Union employees indicated on October 2 that the meeting had already occurred.

in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). On September 3, 1999, the EEOC issued Brandon a right-to-sue letter, but declined to investigate Brandon's charge "because it was not filed within the time limit required by law."

On October 21, 1999, Brandon filed suit in Civil District Court for the Parish of Orleans, alleging discrimination.[5] The suit was removed to federal court on November 18, 1999 based on federal question and diversity jurisdiction. Lockheed moved for summary judgment on March 1, 2000, and the motion was granted by the district court on April 18, 2000.

---

[5] From the face of Brandon's complaint, it is difficult to determine the basis of his claims. He states in his complaint:

VIII.
During all relevant times, Defendant maintained a grievance procedure for alleged violations of policy. Defendant denied petitioner due process by summarily dismissing petitioner without affording him an opportunity to address the faceless allegations of Defendant. Defendant's decision to terminate Petitioner was pre-textural [sic] in nature and was not contemporaneous to the alleged violations. Petitioner had long since been warned and counseled by Defendant and had not engaged in any form of violation prior to being wrongfully terminated.
IX.
Defendant discriminated against the Petitioner when he was denied due process to address the allegations of violations of policy outside of the grievance period.

When questioned as to the bases of his complaints during the hearing on the motion for summary judgment, Brandon's counsel agreed that, with the exception of his Title VII claim, all other claims were preempted by the Labor Management Relations Act ("LMRA"), but also indicated that his claim included a state law wrongful discharge claim.

5

The district court first noted that Brandon conceded at oral argument that any claim he might have had for a deprivation of due process within the grievance procedure is barred either by the preemption of § 301 of the Labor Management Relations Act ("LMRA") or the binding decision of the arbitrator on the issue. The district court recognized that Brandon also conceded at oral argument that he had no claim against the Union for breach of the duty of fair representation.

Second, the court dismissed Brandon's claim for wrongful discharge under Louisiana state law because binding arbitration had already determined that the discharge was proper. Further, § 301 of the LMRA would preempt Brandon's state claim because Brandon's employment was governed by a CBA.

Third, although noting that federal labor law did not preclude Brandon's race discrimination claims, the district court dismissed Brandon's state and federal race discrimination claims because there were no genuine issues of material fact that would support the claims. The court found that Brandon failed to establish a prima facie case of disparate treatment and that, even if he had, his claims were time-barred because he did not file his EEOC charge within the time limit required by Title VII.

Finally, the district court dismissed Brandon's claim that Lockheed had retaliated against him for his union and political activity because such claims fell under the exclusive jurisdiction of the National Labor Relations Board (the "NLRB"),

6

and therefore, the district court found it was without jurisdiction to hear them.

Brandon timely appeals.

## II. STANDARD OF REVIEW

We review <u>de novo</u> a district court's grant of summary judgment. <u>See</u> <u>Evans v. City of Bishop</u>, 238 F.3d 586, 588 (5th Cir. 2000). Summary judgment is appropriate when the record shows "'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Allen v. Rapides Parish Sch. Bd.</u>, 204 F.3d 619, 621 (5th Cir. 2000) (quoting <u>Taylor v. Principal Fin. Group, Inc.</u>, 93 F.3d 155, 161 (5th Cir. 1996)). "'If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial.'" <u>Id.</u> (quoting <u>Taylor</u>, 93 F.3d at 161). "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; the plaintiff [can]not rest on his allegations . . . to get to a jury without any significant probative evidence tending to support the complaint." <u>Giles v. Gen. Elec. Co.</u>, 245 F.3d 474, 493 (5th Cir. 2001) (alteration in original) (internal quotations omitted) (quoting <u>Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d

7

698, 713 (5th Cir. 1994)).  "Instead, Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  "[W]e must view all facts in the light most favorable to the nonmovant."  Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex., 180 F.3d 686, 690 (5th Cir. 1999).

## III. WRONGFUL DISCHARGE CLAIM

Brandon alleges that the district court erred in dismissing his state law wrongful discharge claim as preempted by § 301 of the LMRA ("§ 301").  One difficulty in determining whether the district court erred is that Brandon is unclear about the basis of his state-law wrongful discharge claim, i.e., whether it is statutory or common law.

To the extent that Brandon's state wrongful termination claims arise from Lockheed's violation of the due process guaranteed to him by the CBA, we agree with the district court that those claims are preempted by § 301.[6]  "Preemption is a

---

[6]   Brandon argues at length that Lockheed failed to follow the procedures required by the CBA, that the grievance and arbitration procedures failed to address his central issues, and that he should have the opportunity to present his claims to a trial court.  As explained infra in the text, these claims all pertain to guarantees under the CBA and are preempted by § 301.

8

question of law, which we review de novo." Meredith v. La. Fed'n of Teachers, 209 F.3d 398, 404 (5th Cir. 2000).

Section 301 provides in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1998). Regarding § 301 preemption of state law claims, the Supreme Court has stated that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). A state-law remedy is "independent" of the CBA for § 301 preemption purposes if "resolution of the state-law claim does not require construing the collective-bargaining agreement." Id. at 407.

Where Brandon relies on Lockheed's failure to follow the disciplinary notice procedures required by the CBA, or any of the other procedures or requirements of the CBA, to support his wrongful discharge claims, Brandon's claim would require construing the CBA and is therefore preempted by § 301.[7]

_____

[7] We note that Brandon did not challenge the district court's finding that he had conceded his claims under the LMRA itself. Therefore, that claim is abandoned. See Evergreen Presbyterian Ministries Inc. v. Hood, 235 F.3d 908, 918 (5th Cir.

To the extent that Brandon's state-law wrongful discharge claims rely on some other legal theory that may be independent of the CBA, such as retaliation or harassment, he has pled insufficient facts to survive summary judgment. "[O]ne of the principle [sic] purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose." Melton v. Teacher's Ins. & Annuity Ass'n, 114 F.3d 557, 559 n.1 (5th Cir. 1997). "[U]nsupported allegations in pleadings are insufficient to prevent the grant of summary judgment." Bagby v. Gen. Motors Corp., 976 F.2d 919, 921 (5th Cir. 1992). Brandon has submitted no evidence in support of his claims and has pled no facts that could support a state-law wrongful discharge claim.

_____

2000).
        Even had he not abandoned those claims, Brandon is bound to the result of the arbitration proceedings under the LMRA. While an individual may bring suit against his employer for breach of a CBA, he is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983). "Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement." Id. The CBA stated that the grievance and arbitration procedure was final and binding. The exception to the limited review applies when "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." Id. This argument was waived by Brandon in the district court.

The district court did not err in granting summary judgment in favor of Lockheed on Brandon's state law wrongful discharge claims.

## IV. DISCRIMINATION CLAIMS

The district court dismissed Brandon's federal and state race discrimination claims, finding that there were no genuine issues of material fact that would support the race discrimination claims and that Brandon had failed to establish a prima facie case of disparate treatment race discrimination. Further, the district court found that, even if Brandon had established a prima facie case of race discrimination, his claims were time-barred because he failed to file his EEOC charge within the required time limit. Brandon argues that the district court erred in dismissing his race discrimination claims.[8]

---

[8] Brandon's arguments regarding why the district court decision was in error are unclear. To the extent he argues that the district court erred in finding that the arbitrator's decision was binding on his race discrimination claims and thus precluded his race discrimination claims, we hold that the district court made no such finding. In fact, the district court stated that "[n]ormally exclusive arbitration provisions must give way to certain statutory rights, such as the anti-discrimination provisions in Title VII." The district court dismissed Brandon's race discrimination claims on other grounds.

To the extent that Brandon argues that removal from federal to state court was improper because his claims did not arise under federal law, we disagree. Brandon argues that his original complaint did not state a federal question and, under the "'well plead complaint rule,'" should not have been removed to federal court. However, Brandon admits that he "sought relief for wrongful termination and the denial of due process to address the allegations of violations of policy outside of the grievance

11

We agree with the district court that Brandon has not met his burden of "produc[ing] evidence or designat[ing] specific facts showing the existence of a genuine issue for trial" on either his state or federal racial discrimination claims.  Allen, 204 F.3d at 621 (internal quotations omitted) (quoting Taylor, 93 F.3d at 161).[9]  Claims of racial discrimination supported by

---

period."  This latter claim arises under the CBA, see supra Part III, and is subject to removal based on the "complete preemption" doctrine.

> While federal courts typically ascertain the existence of federal question jurisdiction by applying the familiar "well-pleaded complaint" rule, there exists a "corollary" to this rule, which is most frequently referred to as the doctrine of "complete preemption." This doctrine has been used to define limited categories of state law claims that are "completely preempted" such that "any civil complaint raising this select group of claims is necessarily federal in character," no matter how it is characterized by the complainant in the relevant pleading. . . . Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to "federal question" jurisdiction and thus may provide a basis for removal.  The Supreme Court has held the doctrine of complete preemption applicable to certain claims preempted by ERISA, as well as to certain claims preempted by the LMRA.

McClelland v. Gronwaldt, 155 F.3d 507, 512 (5th Cir. 1998) (citations and footnotes omitted).
    Further, removal in this case was premised not only on the federal question presented by the preemption of § 301 of the LMRA but also on diversity jurisdiction.

    [9]  Brandon makes race discrimination claims under both federal and state law.  Because of the similarity between Title VII and LA. REV. STAT. ANN. § 23:1006, Louisiana's anti-discrimination statute, courts appropriately look to federal jurisprudence to interpret Louisiana discrimination laws.  See King v. Phelps Dunbar, L.L.P., 98-1805, at 7 (La. 6/4/99), 743 So. 2d 181, 187; see also Nichols v. Lewis Grocer, 138 F.3d 563,

12

circumstantial evidence are analyzed under the framework set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). "First, the plaintiff must establish a prima facie case of discrimination." <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000). Once the plaintiff satisfies this prima facie burden, the burden shifts to the employer to produce a "legitimate, nondiscriminatory reason for its decision." <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000). "If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, 'the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the factfinder must decide the ultimate question: whether [the] plaintiff has proved [intentional discrimination].'" <u>Evans v. City of Houston</u>, 246 F.3d 344, 350 (5th Cir. 2001) (alterations in original) (some internal quotations omitted) (quoting <u>Russell</u>, 235 F.3d at 222). "In the context of a claim of discrimination, a plaintiff must adduce evidence that the justification was a pretext <u>for racial and age discrimination</u>." <u>Id.</u> at 351. "In making this showing, the

566 (5th Cir. 1998); <u>Hicks v. Cen. La. Elec. Co.</u>, 97-1232 (La. App. 1 Cir. 5/15/98), 712 So. 2d 656, 658 ("Because of the substantial similarities between state and federal anti-discrimination laws, courts may appropriately consider interpretations of federal statutes when construing Louisiana law."). Our finding that the district court did not err in granting summary judgment on Brandon's federal discrimination claims applies as well to Brandon's state discrimination claims.

13

plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination." Russell, 235 F.3d at 222. "However, as the Court stated in Hicks, a showing of pretext does not automatically entitle an employee to a judgment as a matter of law." Id. at 223. While a showing of pretext will more likely than not lead to an inference of discrimination, see id., a showing of pretext by the plaintiff will not always be sufficient to infer discrimination. For example, "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," the employer would still be entitled to summary judgment. See Reeves, 120 S. Ct. at 2109.

We agree with the district court that Brandon has failed to establish a prima facie case of race discrimination. If Brandon's claim is construed as a claim of discriminatory termination, to establish his prima facie case he must establish: "(1) that he is a member of a protected group; (2) that he was qualified for the position held; (3) that he was discharged from the position; and (4) that he was replaced by someone outside of the protected group." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 426 (5th Cir. 2000). It is uncontroverted that Brandon is a member of a protected group and that he was discharged from his position; however, he has failed to present any evidence

14

either that he was qualified for the position or that he was replaced by someone outside the protected group.

Alternatively, Brandon's claim may be interpreted as an allegation of discriminatory discipline. "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly'." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980)). Again, Brandon has failed to establish the requisite prima facie case. When asked to identify employees who were treated differently, Brandon alleges that three other employees, all African-American men, received only a ten-day disciplinary suspension whereas he received a thirty-day suspension for his behavior. The treatment of these three African-American men does not create a prima facie case of racial discrimination.

Because we agree with the district court that Brandon failed to meet his prima facie burden, we need not address whether his EEOC charge was timely filed. We find that the district court did not err in granting summary judgment on Brandon's race discrimination claims.

## V. RETALIATION CLAIM

15

The district court dismissed Brandon's retaliation claim, finding that it did not have jurisdiction because the claim fell within the exclusive jurisdiction of the NLRB. Brandon argues that the district court's finding was error.[10] We disagree.

The NLRB has primary jurisdiction to decide what constitutes unfair labor practices under the National Labor Relations Act (the "NLRA"). See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83 (1982); United Food & Commercial Workers Union AFL-CIO v. Pilgrim's Pride Corp., 193 F.3d 328, 331 (5th Cir. 1999). "As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to §7 or §8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" See Kaiser Steel Corp., 455 U.S. at 83 (citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959)). There are exceptions to this general rule, see e.g., United Food, 193 F.3d at 331; Tamburello v. Comm-Tract Corp., 67 F.3d 973, 977-78 (1st Cir. 1995), none of which applies to this case.

Further, an unfair labor practice is defined in § 8 of the NLRA. Section 8 states in relevant part: "[i]t shall be an unfair labor practice for an employer . . . to interfere with,

---

[10] Brandon argues that the district court erred when it dismissed his claim for failure to state a claim upon which relief could be granted. We construe Brandon's argument to refer to his claim that Lockheed retaliated against him for his union activities, which the district court dismissed for lack of jurisdiction.

16

restrain, or coerce employees in the exercise of the rights guaranteed in section [7] of this title." 29 U.S.C. § 158(a)(1) (1998). Moreover, § 8 of the NLRA provides that "[i]t shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." Id. § 158(a)(3). Further, "an employer violates Section 8(a)(3) by taking adverse employment action against an employee in retaliation for his union activities or sympathies." New Orleans Cold Storage & Warehouse Co. v. NLRB, 201 F.3d 592, 600 (5th Cir. 2000); see also Marshall Durbin Poultry Co. v. NLRB, 39 F.3d 1312, 1318 (5th Cir. 1994) ("Section 8(a)(3) proscribes employer reprisals against an employee for engaging in Union activity.").

Brandon alleges that he was terminated in retaliation for his role as a union representative and for speaking up for the rights of his co-workers. This allegation would constitute an unfair labor practice under § 8 of the NLRA and falls under the exclusive jurisdiction of the NLRB. Therefore, we find that the district court did not err in finding it was without jurisdiction to hear the retaliation claim.

## VI. CONCLUSION

17

For the foregoing reasons, we AFFIRM the judgment of the district court.